# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES E. NASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-201-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Charles E. Nash requests judicial review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 6, 1951 and was forty-five years old at the time of the administrative hearing. He graduated high school, trained as a welder (Tr. 394), served in the Marine Corps from 1971 to 1977, and has worked as a feed store laborer, a security guard, an equipment operator, and a mechanic (Tr. 73). The claimant alleges that he has been unable to work since August 22, 2003 because of chronic obstructive pulmonary disease (COPD), high cholesterol, depression, and emphysema (Tr. 242-43).

## Procedural History

The claimant applied on June 16, 2005 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Michael Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 25, 2007. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a narrowed range of medium work, *i. e.*, he could lift/carry 25 pounds frequently and 50 pounds occasionally, and stand/walk/sit for six hours in an eight-hour workday, but had to avoid exposure to

respiratory irritants and contact with the general public (Tr. 22). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, general laborer, packaging/shipping bander, and trimmer (Tr. 29).

## Review

The claimant contends the ALJ erred: (i) by failing to properly weigh the opinion of his treating physician opinion; (ii) by failing to properly evaluate his credibility; and, (iii) by formulating and RFC that is not supported by substantial evidence. Because the Court finds that the ALJ failed to perform a proper credibility analysis, the decision of the Commissioner must be reversed and the case remanded for further evaluation.

The claimant received most of his treatment for both his physical and mental impairments at the VA medical center in Muskogee, Oklahoma. Claimant saw Dr. Wellington G. Robbins in conjunction with his COPD. On October 22, 2003, the claimant presented to Dr. Robbins with shortness of breath, which claimant stated started in July 2003 while working at a feed store (Tr. 150). Dr. Robbins found diminished breath sounds and prescribed an inhaler and a nebulizer (Tr. 151-52). Dr. Robert Tobias of the Oklahoma Department of Disability Division (DDS) noted that claimant has a "cough productive of whitish phlegm usually in the morning . . . [and] will occasionally wheeze" (Tr. 132). Dr. Tobias also noted that claimant's problems started after exposure to chemicals at the feed store where claimant worked, he became "acutely dyspneic by the next day" (Tr. 132). The assessment at that time was "chronic obstructive pulmonary

disease of moderate severity clinically" (Tr. 134).  On March 22, 2004, claimant was treated by Dr. Robbins again, and it was noted that his breathing was a "little better" and that was attributed to the claimant's use of a nebulizer (Tr. 161).  The claimant saw Dr. Robbins again in December 2004, where it was noted that claimant had decreased endurance, trouble sleeping and his dyspnea had not improved (Tr. 169).  Notably, Dr. Wellington observed that claimant "continues to be severely limited in his exercise tolerence (sic) due to his COPD" and that claimant was "limited in all activity" (Tr. 170).

In conjunction with his treatment of claimant, Dr. Robbins submitted two medical opinions.  First, Dr. Robbins wrote in April 2005 that claimant "is most impaired by the chronic lung disease and the associated wheeze and dyspnea with activity" (Tr. 184).  Further, he wrote that claimant was "severely symptomatic and limited by this problem", and Dr. Robbins went on to opine that claimant was "not able to be consistantly (sic) imployed (sic) due to his health" (Tr. 184).  Dr. Robbins submitted a Medical Source Statement on October 31, 2006, in which he opined that claimant was occasionally able to stand or walk, *i. e.*, for two to three hours on a sustained basis (Tr. 314).  He further opined that in a typical eight hour workday, claimant would only be capable of standing occasionally, *i. e.*, two to three hours, and walking infrequently, *i. e.*, zero to one hour, and attributed his findings to claimant's "severe chronic obstructive lung disease with marked decreased exercise tolerance" (Tr. 315).

Dr. Shivanna V. Kumar, M.D, also treated the claimant for his mental impairments at the VA medical center.  Dr. Kumar wrote that claimant suffered from "uncontrollable

tearfulness", anger problems, and that he has a history of seeing images that claimant referred to as "death angels" (Tr. 360). Further, Dr. Kumar diagnosed claimant with depression and assigned a Global Assessment of Functioning (GAF) score of 57 (Tr. 364). Dr. Kumar evaluated claimant's mental health status again in June 2005, at which time he noted that claimant was "gasping for air" and was in "acute physical distress due to shortness of breath" (Tr. 357). Dr. Kumar diagnosed claimant with mood disorder secondary to COPD and assigned a GAF of 51 (Tr. 357-58). Although Dr. Kumar only treated claimant for his depression symptoms, Dr. Kumar completed a Medical Source Statement, in which he opined that claimant's COPD, emphysema, and asthma allowed him to infrequently stand/walk and that his concentration was impaired due to pain, medication, and fatigue (Tr. 321).

The claimant testified that he used his nebulizer three to five times per day for approximately twenty minutes per usage (Tr. 435-36). He testified that he spent 60-70% of each day off of his feet because it is difficult for him to breathe with exertion (Tr. 437). If at any time he gets up and runs out of air, he sits down to relax eventually going "into the living room [to] use [his] machine" (Tr. 439). Claimant also stated that he was afraid to leave his home, because he was "scared to be away from [his] medication because it is something when you can't draw your breath" (Tr. 444). Notably, when the claimant was interviewed in connection with his disability claim, the SSA interviewer noted that claimant's "[o]nly outward sign of disability was short[ness] of breath" (Tr. 250), and claimant reported in his function report that he was unable to cook because he was unable

to stand long enough and the heat from the oven "takes his breath away" (Tr. 91). Further, claimant stated that he doesn't "have enough air to do anything", that he "cannot breath[e] . . . cannot stand to be in the heat", and he feels "zapped of [his] air and energy" (Tr. 94).

Deference must be given to a credibility determination unless the ALJ misread the medical evidence taken as a whole. *See Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). But findings as to the claimant's credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), *quoting Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). An analysis of the claimant's credibility "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. Here, the ALJ neither discussed the claimant's subjective complaints nor reached any conclusion as to his believability. *Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("The failure to make credibility findings regarding the Williams' critical testimony fatally undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability.") [quoted in *Kepler*].

Because the ALJ failed to properly analyze the claimant's credibility, the decision of the Commissioner should be reversed and the case remanded for further analysis. On remand, the ALJ should perform a proper credibility analysis and determine if any of the

claimant's subjective complaints affect his RFC. If so, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is consequently REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**